People ex rel. McKone agt. Green.

# SUPREME COURT.

THE PEOPLE, &c., *ex rel.* JAMES McKONE agt. ANDREW H. GREEN, comptroller, &c., and ALLAN CAMPBELL, commissioner, &c.

*Mandamus to compel comptroller of New York city to approve a bond and sureties and the commissioner of public works to execute a contract.*

The lowest bidder for a contract for public work in the city of New York is not absolutely and of right entitled to the contract until he has given adequate security, and such security has been passed upon and approved by the comptroller.

Where sureties, originally good, have become inadequate during the time the comptroller refused to act or pass upon their sufficiency, the commissioner of public works, under the city ordinances, may accept new sureties; but such acceptance is an act of grace and may be reconsidered and withdrawn, for good and sufficient reasons, at any time before the comptroller has approved of their adequacy and sufficiency.

*Chambers, November,* 1876.

On or about the 31st day of October, 1872, an ordinance was adopted by the common council and approved by the mayor, directing that Madison avenue, from Ninety-ninth street to One Hundred and Fifth street, be regulated, graded, &c. The relator was the lowest bidder for the work. His estimate or proposal was accordingly accepted by the commissioner of public works who notified him of such acceptance. Subsequently, the commissioner of public works transmitted the relator's bid or proposal, with the agreement of the sureties for the faithful performance of the work, to the comptroller for his approval of the security offered. The comptroller refused to signify his approval of the sureties and

People ex rel. McKone agt. Green.

returned the papers to the commissioner of public works, who then refused to enter into and sign the contract for the work. The relator then applied to the court of common pleas for a peremptory writ of mandamus directed to the comptroller and commissioner of public works, commanding the comptroller to approve the bond, if sufficient, and the commissioner of public works to sign the contract. The application was denied at special term, but, on appeal, the general term granted the writ as prayed for, and the court of appeals, in April, 1876, affirmed the order of the general term (*See People ex rel. James McKone* agt. *Green, Comptroller,* 50 *Howard's Practice Reports,* 500).

After the decision of the court of appeals the writ was issued. It was then found, that pending the proceedings theretofore had, the sureties first offered had, from various causes, become insolvent and unable to justify. New sureties were offered by the relator and accepted by the commissioner of public works, but the comptroller refused to approve of their adequacy and sufficiency for the same reason that he assigned for his refusal to approve the first sureties.

This application was then made for a peremptory writ of mandamus. Before a hearing was had the comptroller requested the commissioner of public works to withdraw his consent to the substitution of the new sureties, which request the commissioner was prevented from complying with. The order is referred to in the opinion.

Further facts appear in the opinion of the court.

*James A. Deering,* for relator.

*William C. Whitney,* counsel to the corporation, *George P. Andrews, T. B. Clarkson,* opposed.

LAWRENCE, *J.* — The point upon which this case turns is as to the right of the commissioner of public works, after once having consented to the substitution of a surety in place of the surety originally offered by the bidder, to withdraw

such consent before the comptroller has approved of the sureties. In this case,· after a peremptory mandamus had issued out of the court of Common Pleas, directing the comptroller to pass upon the adequacy of the relator's sureties, it was found that both of the original sureties were not adequate, and thereupon, with the consent of the commissioner of public works, Messrs. Waterbury and Deering were proposed as new sureties by the relator.

This application was then made by the relator for a writ of peremptory mandamus commanding the comptroller to approve of the adequacy and sufficiency of such sureties, and the commissioner of public works to enter into and execute the contract for regulating and grading, &c., Madison avenue, which is mentioned in the affidavit. By the order to show cause, the comptroller was enjoined, in the mean time, from refusing to approve of the sureties to the commissioner of public works without his approval. By a ·subsequent order of the court the commissioner of public works was directed *to take no action or proceeding* in relation to the bid of the relator, or in relation to said contract, it being alleged, that the comptroller, in order to avoid the injunction, had requested the commissioner of public works to erase from the relator's bid, certain words, and to withdraw the bid or proposal of the relator from the comptroller's possession. By an order afterwards made, on the application of the commissioner of public works, through the counsel to the corporation, the relator was directed to show cause why the injunction against the said commissioner should not be vacated. The counsel for the relator contends that after the commissioner of public works has once assented to the change or substitution of sureties, he cannot withdraw his assent. I am unable to accede to this view and I do not think that the cases which counsel has cited sustain his position. The power to consent to such substitution is conferred by the 27th section article 2 of chapter 7 of the Revised Ordinances of 1866, which section prescribes " that every contract

People ex rel. McKone agt. Green.

for supplies or work, &c. * * * should be accompanied by a bond in the penalty mentioned in the proposals there-for, executed by the persons consenting to become bound as sureties, as provided in section 20, *or by such other persons as should be substituted therefor, with the consent of the head of the department making such contract, &c.*" No obligation is imposed upon the head of the department to give such consent. At the time that the relator applied to the commissioner of public works for leave to substitute Messrs. Waterbury and Deering for Messrs. Gilfoye and Prior, although he was the lowest bidder, he was not the lowest bidder " who had given security for the faithful per-formance of his contract, in the manner prescribed and required by ordinance, nor had the adequacy and sufficiency " of his security been approved by the comptroller. The relator was therefore in default, whether through his own fault or through that of the comptroller, it is not necessary now to determine. Conceding all that the learned counsel for the relator, in his most elaborate and instructive brief, claims as to the rights of the lowest bidder, whether under the charter of 1873 or the act of 1861, it is clear that the lowest bidder must give adequate security, and that such adequate security must be passed upon and approved by the comptroller before the lowest bidder becomes absolutely and of right entitled to the contract. Now, in this case, it appears that after the commissioner of public works had consented to the substitution of the new sureties in the place and stead of the old sureties, and before the approval of the adequacy and sufficiency of the new sureties by the comptroller, the com-missioner became desirous " of reconsidering his approval of, or consent to such substitution," and in his affidavit he states that the reason why he desired so to reconsider his approval was because the work can now be done for $60,000, whereas, if the relator be allowed to execute the same under his bid, the expenditure, exclusive of surveyors' and engineers' fees, will amount to $120,000. The consent for the substitu-

tion of new sureties for those originally proposed is an act of grace on the. part of the head of the department.

It rests upon no new consideration and it appears to me that if the head of the department becomes satisfied, before the act is consummated, by the comptroller's approval of the sureties, that he has acted unwisely or unadvisedly, it should be and it is within his power to withdraw his consent.

To illustrate : If the position of the learned counsel for the relator is correct, if the commissioner of public works has ascertained, within five minutes after he had consented to the substitution of the sureties, that they were worthless, he could not have revoked his consent, and the city would have been obliged to enter into the contract, unless the comptroller discovered the insolvency or irresponsibility of the sureties and refused to approve of them. I cannot conceive that such is a fair and reasonable interpretation of the provisions of the ordinance. It has been before observed that the cases cited by the learned counsel for the relator, do not appear to sustain the counsel's position that the commissioner of public works had no right to recall his consent when once given. Upon examining those cases I am of the opinion that it will be found that they were all cases in which third parties, on the faith of the act sought to be undone or revoked, had entered into obligations and agreements, into which they otherwise would not have entered. There the principle of estoppel applies. But in this case the relator contracted no obligation and he entered into no new contract on the faith of the consent of the commissioner of public works, to the substitution of the new sureties. He had made his bid several years before, and his sureties had been determined by the comptroller to be inadequate. When he came before the commissioner of public works, asking that new and other sureties might be accepted, he offered no new consideration and none passed from him to the city. Upon principle, therefore, and upon the authorities cited, as I understand them, I am of the opinion that until the comptroller had

actually passed upon the sufficiency of the new sureties the commissioner of public works was authorized to recall and revoke his consent to the substitution of sureties; and, as I cannot see that the plaintiff, by such revocation, will lose any legal rights to which he was entitled at the time the consent was obtained, and as it is apparent that much injury may ensue to those who would be assessed for the work if executed, I reach the conclusion that the order enjoining the commissioner should be vacated. The motion for a mandamus might, perhaps, be properly denied on the ground that the granting of the writ is much within the discretion of the court, and that regarding the expense to which property owners might be subjected, by the execution of the contract in question, it would be a wise exercise of the discretion of the court to refuse the writ and put the relator to his action against the corporation for damages. I prefer, however, to rest this case on the grounds heretofore stated, and as it is apparent that the commissioner desires to reconsider his consent, it follows:

First, that the order restraining him from such reconsideration should be vacated.

Second, that no case is made out for granting a mandamus, either to compel the comptroller to approve of the new sureties, or the commissioner of public works to execute the contract.

Motion is therefore denied, with ten dollars costs.